# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| PATRICIA D. WATSON, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | No. 3:09-CV-131 |
| ) | (Phillips) |
| HILDA SOLIS, SEC'Y OF LABOR, ) | |
| U.S. DEP'T OF LABOR, ) | |
| ) | |
|     Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff Patricia Watson's Motion for Summary Judgment [Doc. 9]. On October 29, 2002, Plaintiff filed a claim for benefits under Part E of the Energy Employees Occupational Illness Compensation Program Act of 2000 ("EEOICPA"), 42 U.S.C. §§ 7384, *et seq*. On March 19, 2009, the Department of Labor ("DOL") issued a final decision denying Plaintiff's claim for Part E benefits. Plaintiff now seeks review of the DOL's decision. In particular, Plaintiff argues that the DOL's decision was based upon an unreasonable interpretation of the EEOICPA.

Because this case involves an agency's interpretation of a federal statute, the Court must follow the steps established in Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837 (1984). Under the first step, the Court must determine whether the phrase "incapable of self-support" has an ambiguous meaning. If the Court finds that the phrase is ambiguous, then it proceeds to the second step of Chevron analysis. Under the second step, the Court must determine which standard of deference to apply in analyzing the agency's interpretation: either Chevron deference, or deference under

1

Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944). Third, once the appropriate standard of deference has been established, the Court must determine whether to defer to the DOL's interpretation of the statute. Fourth, assuming that the DOL's interpretation was reasonable under Chevron or Skidmore, did the DOL act arbitrarily or capriciously in denying Plaintiff's claim for benefits under Part E of the EEOICPA?

For the following reasons, Plaintiff's Motion for Summary Judgment [Doc. 9] is **DENIED**. First, the Court finds that the DOL's interpretation of 42 U.S.C. § 7385s-3(d)(2) is well-reasoned and persuasive under Skidmore, 323 U.S. at 140. Second, the Court finds that the DOL did not act arbitrarily or capriciously in denying Plaintiff's claims for Part E benefits. Accordingly, this case is **DISMISSED**.

## I.   BACKGROUND

The plaintiff, Patricia Watson ("Plaintiff"), is the daughter and sole survivor of Ethrage J. Hickle ("Mr. Hickle"). Mr. Hickle worked as a contractor for the Department of Energy ("DOE") in Oak Ridge, Tennessee, from 1954 to 1962. In December 1964, Mr. Hickle died of complications from Hodgkin disease.

In 2000, Congress established the EEOICPA "to compensate individuals with illnesses (e.g., cancer, beryllium poisoning) attributable to their exposure to radiation and other toxic substances (e.g. beryllium, silica) while working for the DOE." Harger v. U.S. Dep't of Labor, 569 F.3d 898, 901 (9th Cir. 2009) (citing 42 U.S.C. §§ 7384, 7384d)). Congress appropriated $250 million to the Energy Employees Occupational Illness Compensation Fund. See 42 U.S.C. §§ 7384e, 7384.

The DOL is responsible for administering claims filed under the EEOCIPA.[1] Any person seeking benefits must file a claim with the DOL's Office of Workers' Compensation Programs ("OWCP"). *See* 20 C.F.R. §§ 30.100, 30.101. After reviewing a claim, the OWCP issues a recommended decision. Id. The claimant then has sixty days to file objections with the Final Adjudication Branch ("FAB"). Id. Ultimately, the FAB issues the final agency decision approving or denying a claim. Id.

On October 29, 2002, Plaintiff filed a claim for benefits under Part B and Part D[2] of the EEOICPA based upon her father's illness. Part E of the EEOICPA establishes a compensation program that provides benefits to individuals, or their eligible survivors, for illnesses incurred as a result of exposure to toxic substances in the performance of work for the DOE, its predecessor agencies, or certain contractors and subcontractors. *See* 42 U.S.C. §§ 7385s, 7385s-1. Part E allows covered employees or their eligible survivors to receive lump-sum payments and medical benefits based on a worker's permanent impairment and/or calendar qualifying wage-loss. *See* 20 C.F.R. § 30.0.

In reviewing Plaintiff's claim, the DOL determined that Mr. Hickle was a "covered employee" under the EEOICPA. In particular, the FAB determined that Mr. Hickle had a 50% or

---

[1] The EEOCPIA provides that "[t]he President shall carry out the compensation program through one or more Federal agencies or officials, as designated by the President." 42 U.S.C. § 7384d(a). In an Executive Order on December 7, 2000, the President delegated his authority to the DOL. *See* Exec. Order No. 13179, 65 F.R. 77487 (2000). Notably, the President delegated authority to the Secretary of Labor to "[a]dminister and decide all questions arising under the Act not assigned to other agencies by the Act or by this order, *including determining the eligibility of individuals with covered occupational illnesses and their survivors and adjudicating claims for compensation and benefits*." Id. (emphasis added).

[2] On October 28, 2004, Part D was repealed and Part E was enacted. *See* 42 U.S.C. § 7385s-10(a), (g). Under Part E, the DOL was required to administer all requests previously filed under Part D. Thus, Plaintiff's original claim for benefits under Part D became a request for benefits under Part E.

greater probability that he developed cancer as a result of his employment as a DOE contractor. [*See* Notice of Final Decision and Remand Order by FAB on December 13, 2007, AR 135-38]. On December 13, 2007, the FAB awarded benefits to Plaintiff under Part B of the EEOICPA in the amount of $150,000. [Id.]. However, the FAB remanded the matter to the District Office to determine whether Plaintiff was a "covered child" under Part E. [Id.].

For purposes of claims brought under Part E, a "covered child" is defined as a child of the employee who, as of the employee's death:

>  (A) had not attained the age of 18 years;
> 
>  (B) had not attained the age of 24 years and was a full-time student who had been continuously enrolled as a full-time student in one or more educational institutions since attaining the age of 18 years; or
> 
>  (C) had been incapable of self-support.

42 U.S.C. § 7385s-3(d)(2). At the time of Mr. Hickle's death, Plaintiff was nineteen years old and was not a full-time student. Thus, the only way that Plaintiff could receive benefits under Part E is if she was "incapable of self-support" at the time of her father's death. 42 U.S.C. § 7385s-3(d)(2)(C). Following notice and comment rulemaking, the DOL promulgated regulations to interpret the statute. For example, the DOL defined "covered child" as a child "either under the age of 18 years, or under the age of 23 years and a full-time student who was continuously enrolled in one or more educational institutions since attaining the age of 18 years, *or any age and incapable of self-support*." 20 C.F.R. § 30.500(a)(2) (emphasis added). Neither the statute or regulation define the phrase "incapable of self-support."

In support of her claim, Plaintiff submitted evidence that she was incapable of economically supporting herself at the time of her father's death. At all times prior to her father's death, Plaintiff

4

lived in her parents' home. [AR 132]. While Plaintiff worked as a waitress during this time, she only earned $1.25 an hour (for forty hours per week). [Plaintiff's Reply in Support of Her Motion for Summary Judgment, Doc. 12 at 5-6]. Plaintiff relied upon her parents for all forms of economic support, including food, clothing, and shelter. [AR 124]. Plaintiff was listed as a dependent on her parents' income tax returns. [AR 124]. In addition, Plaintiff dropped out of high school in the ninth grade and had limited vocational skills. [AR 124]. In sum, counsel for Plaintiff argues that "[t]here were no realistic employment opportunities for a girl of Plaintiff's age, lack of education, and domestic situation that would have allowed her to be self-supporting." [Plaintiff's Memorandum of Law in Support of Her Motion for Summary Judgment, Doc. 10 at 5].

On January 15, 2008, the District Office informed Plaintiff that she needed to submit additional evidence in support of her claim, including medical records, Social Security disability awards (if any), tax returns, and other related documents. [Letter Sent by OWCP on January 15, 2008, AR 126-27]. The letter provided, in pertinent part:

> We are in receipt of your attorney's letter dated January 10, 2008 stating that up to and following your father's death in December 1964, you were domiciled in your parents' home, were wholly reliant upon your parents for financial aid, and were incapable of self support. However, additional evidence is required to establish that you were incapable of self support at the time of your father's death.
>
> Please be advised that the law states that for a covered child over 18 years of age who was incapable of self support, the child must have been physically or mentally incapable of self support at the time of the employee's death. The definition is that the child is rendered incapable of self support if his or her physical or mental condition is such that he or she is unable to obtain and retain a job, or engage in self-employment that would provide a sustained living wage.
>
> Such a determination must be based on **medical evidence** which documents the physical or mental condition and its effects on the child's abilities. The medical evidence must demonstrate incapability

5

> for self support.
>
> Please submit the following:
>
> 1. Medical Records that describe your disability, as of the date of your father's death.
>
> 2. Social security disability award letter if one was issued.
>
> 3. Tax returns showing that you were a dependent.
>
> 4. Affidavits from others who can affirm that at the time of your father's death, you were dependent on him for support.
>
> As the claimant, it is your responsibility to submit the evidence needed to establish a claim under the Energy Employees Occupational Illness Compensation Program (EEOICPA or the Act). Please submit the requested information within 30 days of this letter.

[Id. at 126]. Thus, Plaintiff was on notice that she needed to provide medical evidence to support her claim. Plaintiff never provided such evidence.

On June 4, 2008, the District Office recommended denial of Part E benefits. [District Office Recommendation on June 8, 2008, AR 78-80]. The District Office recommended denial because there was insufficient evidence that Plaintiff was incapable of self-support for "medical reasons." [Id.]. On June 16, 2008, Plaintiff timely objected to the recommendation by the District Office. [AR 75-76]. On August 5, 2008, a hearing was held by a FAB representative in Oak Ridge, Tennessee. [AR 18-62].

On March 19, 2009, the FAB issued a final decision denying Plaintiff's claim for Part E benefits. [Notice of Final Decision Following Hearing, AR 6-9]. As a basis for denial, the FAB stated the following:

> No evidence has been submitted documenting that you were functionally disabled as a result of an emotional or physical condition that rendered you incapable of self-support. Therefore, you[r] claim

> is denied because the evidence of record does not establish that you meet the criteria of a 'covered child' as defined by Part E of the Act.

[Id. at 9]. The FAB denied benefits based upon an interpretation of the statute found in the EEOICPA Procedure Manual, Chapter E-600.5b(4) (September 2005) (hereafter, the "Manual"). The Manual defined "incapable of self-support" as requiring that the child be "physically or mentally incapable of self-support." The Manual is an internal policy, not the product of formal notice and rulemaking.

Plaintiff argues that the Manual's definition is inconsistent with the controlling statute and regulation. On March 27, 2009, Plaintiff filed suit in federal court, seeking review of the DOL's decision to deny benefits under Part E of the EEOICPA. The Court has subject matter jurisdiction under 42 U.S.C. § 7384s-6(a).

## II. STANDARD OF REVIEW

"When a plaintiff challenges an agency's administrative decision, the court applies the standard of review set forth under the relevant statute or, if no standard is specified, the court applies the standard of review set forth in the Administrative Procedures Act." Stephens v. U.S. Dep't of Labor, 571 F. Supp. 2d 186, 191 (D.D.C. 2008) (citation omitted). In this case, the statute–not the APA–provides the standard of review. Title 42 of the United States Code, section 7385s-6(a) provides that "[a] person adversely affected or aggrieved by a final decision . . . under [P]art [E] may review that order in the United States district court in the district in which the injury was sustained. . . ." 42 U.S.C. § 7385s-6(a). Section 7385s-6(a) further provides that the district court "shall have jurisdiction over the proceeding and shall have the power to affirm, modify, or set aside, in whole or in part, such decision." Id. The district court "may modify or set aside such decision," however, "only if the court determines that such decision was *arbitrary and capricious*." Id. (emphasis

added).

The arbitrary and capricious standard "is the least demanding review of an administrative action." Coal. for Gov't Procurement v. Fed. Prison Indus., 365 F.3d 435, 475 (6th Cir. 2004). "It requires the party challenging the agency's action to 'show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations.'" Id. at 475 (quoting McDonald Welding v. Webb, 829 F.2d 593, 595 (6th Cir. 1987)). "If there is any evidence to support the agency's decision, the agency's determination is not arbitrary and capricious." Coal. for Gov't Procurement, 365 F.3d at 475-76. As the Supreme Court has stated, an agency's action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). When a "final agency action is challenged, the court's review is limited to the administrative record and the grounds for decision invoked by the agency." Stephens, 571 F. Supp. at 192 (citing Camp v. Pitts, 411 U.S. 138, 142 (1983)).

## III. ANALYSIS

### A. The Steps of Chevron Analysis

As the Court of Appeals for the Sixth Circuit has stated, "[i]n reviewing an agency's interpretation of a statute that it is charged with administering, we apply the familiar two-step process announced by the Supreme Court in Chevron . . ." Chao v. Occupational Safety and Health Review Comm'n, 540 F.3d 519, 523 (6th Cir. 2008). "The initial question under step one of the

Chevron framework is 'whether Congress has directly spoken to the precise question at issue' by employing precise, unambiguous statutory language." Id. (quoting Alliance for Cmty. Media v. FCC, 529 F.3d 763, 776-77 (6th Cir. 2008) (citing Chevron, 467 U.S. at 842)). If the text of the statute is unambiguous, "that is the end of the matter; for the court, as well as the agency must give effect to the unambiguously expressed intent of Congress." Jewish Hosp., Inc. v. Sec'y of HHS, 19 F.3d 270, 273 (6th Cir. 1994) (citing Chevron, 467 U.S. at 842-43).

If, however, the court determines that "Congress has not directly addressed the precise question at issue, that is, that the statute is silent or ambiguous on the specific issue, we must determine 'whether the agency's answer is based on a permissible construction of the statute.'" Battle Creek Health Sys. v Leavitt, 498 F.3d 401, 408-09 (6th Cir. 2007) (quoting Jewish Hosp., Inc., 19 F.3d at 273). In addition, "[w]here the agency's interpretation of the statute does not take the form of a regulation issued following notice and comment rulemaking, but rather is offered through an informal medium- such as an opinion letter, policy statement, *or agency manual*- Chevron-style deference is not warranted, we apply the less deferential Skidmore review to the agency's interpretation." Chao, 540 F.3d at 523 (citing Battle Creek Health Sys., 498 F.3d at 409).

### B.  Step One of Chevron Analysis: The Statute Is Ambiguous

The threshold issue is whether the phrase "incapable of self-support" has an ambiguous meaning. Language is ambiguous when "to give th[e] phrase meaning requires a specific factual scenario that can give rise to two or more different meanings of the phrase." Alliance, 529 F.3d at 777. "[I]n all cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary

meaning of the words used." Am. Tobacco Co. v. Patterson, 456 U.S. 63, 68 (1982). "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42 (1979).

Both parties argue that the meaning of "incapable of self-support" is clear. Not surprisingly, their interpretations of the phrase are different. Defendant argues that the word "incapable" has an inherent mental or physical component. Defendant relies upon the Merriam-Webster Online Dictionary, which defines the word "capable" as including "having attributes (as physical or mental power) required for performance or accomplishment." MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/capable (last visited Sept. 17, 2010). However, Defendant omits the other definitions of "capable" that are provided on that website. The Merriam-Webster Online Dictionary also defines "capable" as "having traits conducive to or features permitting," and "having or showing general efficiency and ability." Id. Furthermore, the Merriam-Webster Online Dictionary defines "incapable" as "lacking capacity, ability, or qualification for the purpose or end in view." MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/incapable (last visited Sept. 17, 2010).

In addition, the Merriam-Webster Online Dictionary defines "self-support" as "independent support of oneself or itself." MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/self-support (last visited Sept. 17, 2010). Combined, the term "incapable of self support" can be defined as "lacking capacity, ability, or qualification . . . [to] independently support [] oneself . . ." Things become a bit murkier when one turns to the definition of "incapacity," which the Merriam-Webster Online Dictionary defines as "the quality or state of being

incapable; especially: lack of physical or intellectual power or of natural or legal qualifications." MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/incapacity (last visited Sept. 17, 2010). Thus, there is a dispute as to whether "incapable" has an inherent mental or physical component, or whether it refers to "ability" more generally.

The Oxford Online Dictionary also provides little assistance. That Dictionary defines "incapable" as being "unable to do or achieve (something)." OXFORD ONLINE DICTIONARY, http://english.oxforddictionaries.com/view/entry/m_en_us1420490#m_en_us1420490 (last visited Sept. 17, 2010). The Oxford Online Dictionary defines "incapacity" as "physical or mental inability to do something or to manage one's affairs." OXFORD ONLINE DICTIONARY, http://english.oxforddictionaries.com/view/entry/m_en_us1257475#m_en_us1257475 (last visited Sept. 17, 2010). Thus, it appears that "incapable" refers to "ability" more generally, while "incapacity" refers more to a person's physical or mental ability. Of course, "ability" itself has a physical or mental component. *See* MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/ability (last visited Sept. 17, 2010).

Suffice to say, the meaning of "incapable of self-support" is not clear. There are too many conflicting definitions for the Court to definitively conclude that "incapable" has an inherent mental or physical component. Unfortunately, the legislative history does not shed light on this issue. *See* H.R. REP. NO. 106-945 (2000) (Conf. Rep.). Nor does the structure of the statute provide any guidance. Instead, the Court is left with two plausible constructions of the phrase, "incapable of self-support." First, it could refer, as the DOL argues, that one has to be "mentally or physically incapable of self-support." Second, the phrase could refer, as Plaintiff argues, to social or economic reasons for being "incapable of self-support." Because the phrase permits at least two plausible

11

interpretations, and because there is no legislative history or other canons of statutory construction that provide guidance, the phrase is ambiguous for purposes of Chevron analysis.

> C. **Step Two of Chevron Analysis: Skidmore is the Appropriate Standard of Review**
>
> 1. **Skidmore Applies Because the DOL's Interpretation of the Statute Was Not Based Upon Formal Notice and Rulemaking**

As the Court previously stated, when an agency's interpretation of a statute "does not take the form of a regulation issued following notice and comment rulemaking," but rather, is "offered through an informal medium" (which includes agency manuals), the agency is entitled to the less deferential Skidmore review. Chao, 540 F.3d at 523 (citing Battle Creek Health Sys., 498 F.3d at 409). In this case, the DOL's interpretation of the statute is based upon an agency manual. Accordingly, the DOL is not entitled to Chevron deference, but rather, Skidmore deference. *See* Chao, 540 F.3d at 527 (explaining that Chevron deference "is not required where the interpretation is offered via an informal medium-such as an opinion letter, *agency manual*, policy statement or enforcement guideline") (emphasis added) (citing Christensen v. Harris Cnty, 529 U.S. 576, 587 (2000)). *See also* United States v. Mead Corp., 533 U.S. 218, 235 (2001) (holding that Skidmore deference should apply to interpretations contained in agency manuals or enforcement guidelines).

The Court of Appeals for the Sixth Circuit has described Skidmore deference as follows: "[i]n contrast to the deferential review required by Chevron, under Skidmore, we give an agency interpretation deference that 'depend[s] upon the *thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control*.'" Chao, 540 F.3d at 526 (emphasis added) (quoting Skidmore, 323 U.S. at 140).

## 2.      Reviewing the DOL's Interpretation Under Skidmore

The Court's role is not to decide which party has the more "correct" interpretation. The DOL was given authority to construct reasonable rules–both formal and informal–to determine eligibility under the EEOICPA. Under Skidmore, all the Court must do is determine whether the DOL has provided a well-reasoned, persuasive justification for its interpretation. *See* Chao, 540 F.3d at 527 (recognizing that under Skidmore an agency is "entitled to deference only to the extent that it has the power to persuade"). Having applied the factors in Skidmore, the Court finds that the DOL's interpretation of the provision is a reasonable, persuasive construction of the statute. In particular, the Court finds that the "validity of [the DOL's] reasoning" is persuasive. Skidmore, 323 U.S. at 140.

Under Part E of the OOCIPA, the term "covered child" means a child who, as of the employee's death:

> (A) had not attained the age of 18 years;
>
> (B) had not attained the age of 23 years and was a full-time student who had been continuously enrolled as a full-time student in one or more educational institutions since attaining the age of 18 years; or
>
> (C) had been incapable of self-support.

42 U.S.C. § 7385s-3(d)(2). In its final agency decision on March 19, 2009, the FAB decided that Plaintiff did not demonstrate that she was "incapable of self-support" at the time of Mr. Hickle's death. In particular, the FAB denied benefits under Part E because Plaintiff failed to submit medical evidence demonstrating that she could not support herself due to a physical or mental condition. [Notice of Final Decision Following Hearing, AR 6-9]. The FAB based its decision on the Manual, which provides, in relevant part:

> In order to be entitled as a covered child who has been incapable of self-support at the time of death, the child must have been physically or mentally incapable of self-support regardless of the child's marital status or dependency on the employee for support. *A child is incapable of self-support if his or her physical or mental condition is such that he or she is unable to obtain and retain a job, or engage in self-employment that provides a sustained living wage. A child is not incapable of self-support merely because of an inability to obtain employment due to economic conditions, lack of jobs skills, etc.*

[Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment, Doc. 11 at 20] [emphasis added]. The Court finds that the Manual provides a well-reasoned interpretation of the statute.

First, while the Court previously decided that the word "incapable" does not clearly contain an inherent mental or physical component, the Court finds that it is reasonable to construe the word as having such meaning. After all, common definitions of the words "capable," "incapable," and "incapacity" do include references to mental or physical components. Granted, the word "incapable" is also defined more generally as pertaining to "ability," *see* MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/incapable (last visited Sept. 17, 2010), but "ability" itself is defined in part by mental or physical components. In fact, the Merriam-Webster Online Dictionary defines "ability" as "the quality or state of being able; especially: physical, mental, or legal power to perform." MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/ability (last visited Sept. 17, 2010). Clearly, the ability to perform an exercise is limited by one's mental or physical condition. Thus, even if the Court accepted Plaintiff's argument that "incapable" refers to "ability" more generally, "ability" itself refers in part to a mental or physical component. While it is not clear that the word "incapable" has an inherent physical or mental component, it is certainly reasonable to attach such meaning to it.

14

Second, the DOL's interpretation establishes a consistent method of establishing one's status as a "covered child." By requiring the claimant to produce evidence of physical or mental limitations, that establishes a consistent, definable method for determining whether a claimant qualifies as a "covered child." As the Defendant argued:

> From a policy perspective, [the Plaintiff's] proposed statutory construction would mandate use of an open-ended and unworkable eligibility standard. In an ever-changing job market, an individual may find himself employed one day and unemployed the next. Basing eligibility determinations on the vagaries of a claimant's particular local economic and social circumstances at the moment of an employee's death would negate any possibility of applying a consistent, objective standard. The fortuity of a claimant's circumstances at any one moment in time would inject a level of arbitrariness into adjudicatory decisions that would be antithetical to the fairness and equity that Congress intended to govern the administration of the Act. Therefore, evidence of adverse economic and social circumstances by itself cannot satisfy the legal standard 'incapable of self-support.'

[Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment, Doc. 11 at 19].

In response, Plaintiff argues that "[b]ecause the statute and applicable regulation both use 'incapable of self-support' in its broadest iteration, the Defendant erred when it established an internal procedure significantly restricting, or limiting the term." [Plaintiff's Memorandum of Law in Support of her Motion for Summary Judgment, Doc. 10 at 11]. Plaintiff argues that a "claimant is a 'covered child' if she can prove she was incapable of self-support *for any reason*." [Id. at 15] [emphasis added].

Plaintiff ignores the fact that the DOL has discretion to "fill in the gaps" of legislation, so long as the interpretation is well-reasoned. The Court finds that the importance of establishing consistent standards for determining eligibility–which is accomplished through the DOL's interpretation–justifies its interpretation. If the definition "incapable of self-support" were not

15

restricted to persons with mental or physical limitations, where would the DOL draw the line? If the Court accepted Plaintiff's argument, claims would be subject to unlimited social and economic factors. This would lead to inconsistent results, inefficient administration, and an unworkable standard. Based upon this policy consideration, and the fact that it is reasonable to construe the word "incapable" as having a mental or physical component, the Court finds that the DOL has provided a well-reasoned, persuasive justification for its interpretation of 42 U.S.C. § 7385s-3(d)(2), as found in the Manual. Accordingly, the Court will defer to the DOL's interpretation pursuant to Skidmore, 323 U.S. at 140.

### D. The DOL Did Not Act Arbitrarily Or Capriciously In Denying Benefits Under Part E of the EEOICPA

Having decided that the DOL's interpretation of the statute was persuasive under Skidmore, the Court must now decide whether the DOL acted arbitrarily or capriciously in denying benefits under Part E to Plaintiff. In its final agency decision, the DOL provided a reasonable explanation for denying Plaintiff's claim. [*See* Notice of Final Decision Following Hearing, AR 6-9]. Notably, Plaintiff did not provide any medical records to demonstrate that she was "incapable of self-support" based upon physical or mental limitations.

Instead of submitting medical records, Plaintiff submitted evidence demonstrating that she was economically dependent on her parents at the time of her father's death. At all times prior to her father's death, Plaintiff lived in her parents' home [AR 132], worked as a waitress earning $1.25 an hour (for forty hours per week), relied upon her parents for all forms of economic support, [AR 124], dropped out of high school in the ninth grade [AR 124], and was listed as a dependent on her parents' income tax returns [AR 124]. However, none of this demonstrates that she was a "covered child" under Part E of the EEOICPA.

16

In a letter sent by the OWCP on January 15, 2008, Plaintiff was informed that she needed to submit medical records to support her claim for Part E benefits. [Letter Sent by OWCP on January 15, 2008, AR 126]. Plaintiff was informed that to qualify as a "covered child," she had to suffer from a physical or mental condition (at the time of her father's death) that made her "unable to obtain and retain a job, or engage in self-employment that would provide a sustained living wage." [Id.]. The Court has already held that the DOL's interpretation of the statute was well-reasoned and deserving of Skidmore deference. Plaintiff has not provided any medical records in support of her claim for Part E benefits. Consequently, there is no evidence that Plaintiff suffered from mental or physical limitations at the time of her father's death. It was Plaintiff's burden to produce such evidence, and she failed to do so. Accordingly, the Court finds that the DOL did not act arbitrarily or capriciously in denying benefits to Plaintiff under Part E of the EEOICPA.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment [Doc. 9] is **DENIED**. First, the Court finds that the DOL's interpretation of 42 U.S.C. § 7385s-3(d)(2) was well-reasoned and persuasive under Skidmore, 323 U.S. at 140. Second, the Court finds that the DOL did not act arbitrarily or capriciously in denying benefits under Part E, based upon its interpretation in the Manual. Accordingly, this case is **DISMISSED**.

**IT IS SO ORDERED**.

**ENTER:**

<pre>          s/ Thomas W. Phillips     
       United States District Judge</pre>